IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

JACKYE WINTERBOTTOM, )
)
    Plaintiff, )
)
v. ) Case No. CIV-14-1146-D
)
CAROLYN W. COLVIN, Acting )
Commissioner of the Social Security )
Administration, )
)
    Defendant. )

**REPORT AND RECOMMENDATION**

Plaintiff, Jackye Winterbottom, seeks judicial review of the Social Security Administration's denial of disability insurance benefits and supplemental security income benefits. This matter has been referred by United States District Judge Timothy D. DeGiusti for proposed findings and recommendations. *See* 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons set forth below, it is recommended that the Commissioner's decision be affirmed.

**I. Procedural Background**

Plaintiff protectively filed applications for disability insurance benefits and supplemental security income on July 7, 2011, alleging a disability onset date of February 8, 2011. The Social Security Administration denied the applications initially and on reconsideration. Following a hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. *See* Administrative Record (AR) [Doc. No. 10], 9-18. The Appeals Council denied Plaintiff's request for review. AR 1-3. This appeal followed.

**II. The ALJ's Decision**

The ALJ followed the sequential evaluation process required by agency regulations. *See Fisher-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005) (explaining five-step sequential

evaluations process); *see also* 20 C.F.R. §§ 404.1520; 416.920. The ALJ first determined that Plaintiff had not engaged in substantial gainful activity since February 8, 2011. AR 11. At step two, the ALJ determined that Plaintiff has the following severe impairment: bilateral hearing loss. *Id*. He further determined that Plaintiff has non-severe impairments including a crushed sternum, left arm spasms, "burning, buzzing in the head," anxiety attacks and depression. AR 11, 12. At step three, the ALJ found that Plaintiff's impairments do not meet or medically equal any of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 14.

The ALJ next determined Plaintiff's residual functional capacity (RFC):

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant is limited to lifting a maximum of 15 pounds. The claimant must avoid concentrated exposure to loud noises. In addition, the claimant is limited to only occasional climbing, balancing, stooping, kneeling, crouching and crawling; and must be allowed to alternatively sit and stand throughout the workday.

*Id*. At step four, the ALJ concluded that Plaintiff could perform her past relevant work as a night auditor. AR 16. Alternatively, at step five, the ALJ concluded that there are jobs existing in significant numbers in the national economy that Plaintiff can perform. *Id*. at 17-18.

### III.   Plaintiff's Claims

Plaintiff raises two claims of error, contending that the ALJ's decision is not supported by substantial evidence. First, Plaintiff challenges the ALJ's RFC determination on grounds that the ALJ failed to address with sufficient specificity the frequency with which she must alternate sitting and standing. Plaintiff's second claim of error is framed in an imprecise manner. Plaintiff's claim is headed: "The ALJ's Mental Error is not Supported by Substantial Evidence." *See* Plaintiff's Brief at p. 5. In support of the claim, Plaintiff first notes the ALJ's finding that her anxiety attacks and depression are non-severe impairments. *Id*. She also notes the ALJ's finding that she has "only 'mild' symptoms on the Part B criteria of the listings at 12.00." *Id*.

Plaintiff claims an examining physician determined that she suffered "Major Depression, recurrent, moderate" and that this finding conflicts with the ALJ's Part B criteria findings. *Id*. at p. 6. She claims the ALJ did not address this conflicting evidence and failed to identify the weight given to the opinion of the examining physician in violation of the "treating physician rule." *Id*.

The Commissioner frames Plaintiff's second claim of error as whether the ALJ reasonably evaluated the severity of Plaintiff's mental impairments. *See* Commissioner's Brief at pp. 6-9. The Commissioner further addresses the weight the ALJ afforded the opinion of the examining physician. *Id*. at p. 10. As discussed below, the Court finds Plaintiff's second claim of error, as raised, challenges the ALJ's determination as to the severity of her mental impairments, whether the ALJ failed to address conflicting evidence about the severity of those impairments and whether the ALJ failed to give appropriate weight to the opinion of the examining physician.[1]

## IV. Standard of Review

Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *See Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (quotation omitted). A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it. *Branum v.*

---

[1] In her Reply [Doc. No. 22], Plaintiff focuses her argument entirely on the first claim of error. The Reply, therefore, does not elucidate the grounds upon which the second claim of error is based.

*Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004). The court "meticulously examine[s] the record as a whole, including anything that may undercut or detract from the [administrative law judge's] findings in order to determine if the substantiality test has been met." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (citations omitted). While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quotations and citations omitted).

V. <u>Analysis</u>

A. **Need to Alternate Sitting and Standing**

The ALJ made the following RFC determination as to Plaintiff's need to alternate sitting and standing: "[T]he claimant . . . must be allowed to alternatively sit and stand throughout the workday." AR 14. Plaintiff contends this finding violates SSR 96-9p, 1996 WL 374185 at * 7 which provides that where a claimant can perform less than the full range of sedentary work, the RFC "must be specific as to the frequency of the individual's need to alternate sitting and standing." *Id.*[2]

---

[2] The Ruling is also relevant where, as here, a claimant can perform less than the full range of light work because the determination of how long a claimant can sit without changing positions is equally important as to the ability to perform light work. *See* 20 C.F.R. §§ 404.1567(b); 416.967(b). Courts, therefore, have frequently relied on SSR 96–9p when assessing opinions that a claimant cannot perform a full range of light work. *See e.g., Vail v. Barnhart*, 84 Fed. Appx. 1, 4-5 (10th Cir. 2003); *see also Verstraete v. Astrue*, No. 11–1404–SAC, 2013 WL 238193, at **3–5 (D. Kan. Jan. 22, 2013) (unpublished op.) (discussing the application of SSR 96–9p, SSR 83–12, and the relevant case law and noting that the courts "have clearly and consistently indicated since 2000 that the RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing when plaintiff is limited to light or sedentary work").

The reason for this requirement is explained in the Ruling:

> An individual may need to alternate the required sitting of sedentary work by standing (and, possibly, walking) periodically. Where this need cannot be accommodated by scheduled breaks and a lunch period, the occupational base for a full range of unskilled sedentary work will be eroded. The extent of the erosion will depend on the facts in the case record, such as the frequency of the need to alternate sitting and standing and the length of time needed to stand. The RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing.

*Id*. The Ruling further provides that: "[i]t may be especially useful in these situations to consult a vocational resource in order to determine whether the individual is able to make an adjustment to other work." *Id*.

Here, the ALJ did consult a vocational expert. In the hypothetical to the vocational expert, the ALJ included a requirement that the individual be "allowed the ability to alternately sit and stand throughout the work day every 20 to 25 minutes for the purpose of changing positions without leaving the work station." AR 48 (hypothetical two). The vocational expert testified that with Plaintiff's RFC and the specific sit/stand alternative identified, the hypothetical individual could perform Plaintiff's past relevant work as a night auditor and could also perform the sedentary, semi-skilled jobs of telephone solicitor and check cashier. AR 49. The ALJ relied on the vocational expert's testimony in concluding at step four that Plaintiff could perform her past relevant work as a night auditor and in making the alternative finding at step five that Plaintiff could perform other work including telephone solicitor and check cashier. AR 16-17, 18.

Plaintiff fails to address the ALJ's hypothetical questions. And Plaintiff does not otherwise point to any evidence that supports a more frequent or different sit/stand option.

The record includes a Physical Residual Functional Capacity Assessment by the medical consultant Dr. Boatman. AR 278-85. Dr. Boatman found Plaintiff suffered no limitations with

respect to standing or sitting. *Id*. at 279.[3] The ALJ particularly relied, however, on Plaintiff's own testimony about the type of work she could perform:

> [I]f I was able to sit down and answer phones, I probably wouldn't have a problem with that. It would be actually mopping the – like I was doing, mopping floors, doing windows, carrying things, and stuff like that might would create a problem. But I would think if I was able to just maybe sit down and answer telephones or do those kind of duties, I think I might be able. There shouldn't be that much trouble as long as I was allowed to get up and move from time to time if I couldn't stay sitting.

AR 40. As the ALJ stated, "the claimant testified she thinks she would be able to work as a telephone operator if she was allowed to sit, and periodically move about her work station." AR 16.

In contending that a remand is required, Plaintiff cites cases where the ALJ did not include a specific sit/stand limitation in the RFC and further, did not address any specific limitation in the hypotheticals to the vocational expert. *See, e.g., Vail,*, 84 F. App'x at 4 (ALJ's hypothetical questions to the vocational expert "did not contain key facts that must inform the agency's conclusion" as the ALJ "did not properly define how often Vail would need to change positions even 'as needed'"); *Armer v. Apfel*, Case Nos. 98-CV-424-S, 99-7128, 2000 WL 743680 at * 3 (10th Cir. June 9, 2000) (unpublished op.) (holding that ALJ's finding that claimant would have to "change positions from to time to relieve his symptomatology" was too vague, but not addressing hypotheticals to the vocational expert).[4] *See also Maynard v. Astrue*, 276 F. App'x. 726, 731 (10th Cir. 2007) (reversal warranted where the hypothetical questions

---

[3] State agency physicians Dr. Marks-Snelling and Dr. Tom Dees reviewed the evidence and agreed with the findings of Dr. Boatman. AR 302, 303.

[4] In *Armer*, the claimant's treating physician had opined that the claimant had "essentially no capacity for sitting" and the Court ultimately directed an immediate award of benefits on that basis. *Id*. at *4.

"provided no specifics to the vocational expert concerning the frequency of any need [the claimant] may have to alternate sitting and standing" and was "therefore flawed as it pertains to a sit-stand option").

Conversely, in this case the ALJ included in his hypothetical questions limitations supported by the record. Dispositive is the fact that the ALJ included specific sit/stand limitations and Plaintiff points to no evidence to show the sit/stand limitation is not supported by the record. Therefore, Plaintiff's request for a remand on this claim of alleged error is without merit and should be denied.

### B. Evaluation of Mental Impairments

Plaintiff challenges the ALJ's finding that her anxiety attacks and depression do not constitute severe mental impairments. She also claims the ALJ's determination that she suffers only mild limitations from these non-severe mental impairments conflicts with a finding by Dr. Al-Khouri, a consultative examiner, that her major depression is "recurrent, moderate." *See* Plaintiff's Brief at p. 6, *citing* AR 263. Therefore, Plaintiff contends the ALJ's decision with respect to her mental impairments is not supported by substantial evidence.

As an initial matter, as set forth, the ALJ found that Plaintiff suffers from bilateral hearing loss and deemed that impairment severe. AR 11. Where, as here, the ALJ finds a severe impairment at step two and continues with the analysis, any error in not rating a particular impairment as severe is harmless. *See Carpenter v. Astrue*, 537 F.3d 1264, 1265-66 (10th Cir. 2008) (holding that any error in consideration of impairments at step two was harmless, given that ALJ found step-two test satisfied by other severe impairments and continued with his analysis).

Moreover, contrary to Plaintiff's assertion, there is no conflict in the record. Plaintiff acknowledges that the state agency doctors, Dr. King and Dr. Annis, opined that her mental impairments were non-severe. *See* Plaintiff's Brief at p. 6, *citing* AR 276, 300. Those doctors rated the degree of Plaintiff's functional limitations as required by the "special technique" set forth in 20 C.F.R. §§ 404.1520a; 416.920a. The doctors determined that Plaintiff suffered only mild limitations in the first three functional areas: (1) restrictions of activities of daily living; (2) difficulties in maintaining social functioning; and (3) difficulties in maintaining concentration, persistence or pace. AR 274, 298. They further determined Plaintiff suffered no episodes of decompensation. *Id*.

In reaching this conclusion, the doctors specifically relied upon Dr. Al-Khouri's examination. AR 276, 300. Significant to Dr. King's determination was Dr. Al-Khouri's opinion that Plaintiff's symptoms were likely to improve over the course of the next 12 months. AR 276. Dr. King also noted Dr. Al-Khouri's assigned Global Assessment of Functioning (GAF) rating of 85, indicative of only mild limitations.[5]

---

[5] Because mental disorders are often characterized by impairments in several areas, diagnosis requires a multiaxial evaluation. Axis I refers to the individual's primary clinical disorders that will be the foci of treatment; Axis II refers to personality or developmental disorders; Axis III refers to general medical conditions; Axis IV refers to psychosocial and environmental problems; and Axis V refers to the clinician's assessment of an individual's level of functioning, often by using a GAF, which does not include physical limitations. *See* American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders (DSM–IV), (4th ed. 2000), pp. 27–33.

A GAF score represents a clinician's judgment of an individual's overall ability to function in social, school, or occupational settings, not including impairments due to physical or environmental limitations. *Id*. at 32. A GAF of 85 indicates "[a]bsent or minimal symptoms (e.g., mild anxiety before an exam), good functioning in all areas, interested and involved in a wide range of activities, socially effective, generally satisfied with life, no more than everyday problems or concerns (e.g., an occasional argument with family members)." *Id*. at 34.

Dr. Annis observed that Plaintiff's activities of daily living were adequate and that her "task persistence/pace" was "within her present physical tolerances." AR 300. Dr. Annis further found that Plaintiff "relates adequately despite some reported mood changes." *Id*. Both doctors found the medical evidence and other information supported a finding of only a non-severe mental impairment with mild functional limitations resulting from Plaintiff's mental conditions. AR 276, 300.

Contrary to Plaintiff's claim, the opinions of Dr. King and Dr. Annis are not in conflict with that of Dr. Al-Khouri. As noted, Dr. Al-Khouri assigned Plaintiff a GAF of 85 which supports only mild functional limitations. Moreover, Dr. Al-Khouri opined that Plaintiff's depression was "recurrent, moderate" for purposes of Axis I of the DSM-IV, which addresses a claimant's clinical disorders. At Axis III, which addresses a claimant's general medical conditions, he noted that such conditions were "moderate to severe secondary to psychosocial as well as environmental stressors." AR 263. Neither of these findings contradicts the mild functional limitations assigned to Plaintiff by Dr. King and Dr. Annis.

The ALJ thoroughly discussed Dr. Al-Khouri's examination notes including his opinion that Plaintiff's symptoms would likely improve over the course of the next twelve months. AR 12-14. He found Dr. King's findings supported by Dr. Al-Khouri's examination. He also found Dr. Annis's findings consistent with those of both Dr. Al-Khouri and Dr. King. As the ALJ determined, claimant's "alleged degree of limitations is not supported by medical records." AR 16. *See also* AR 276 (Dr. King; "[m]edical evidence indicates claimant's impairments are non-severe"); AR 300 (Dr. Annis; "[c]onsistent medical and functional information in file indicates clt's mental condition is not more than mildly limiting").

Plaintiff contends the ALJ "gave great weight to the state agency mental health doctors but *probably* not the consultative (CE) opinions." *See* Plaintiff's Brief at p. 5 (emphasis added) *citing* AR 15-16. Plaintiff's argument is purely conjectural and the ALJ expressly stated, in reliance on his summary of the findings of the consultative examiners and other physicians and psychologists that he was giving "great weight" to their findings. AR 16. Therefore, Plaintiff's claim that the ALJ failed to give appropriate weight to the opinion of Dr. Al-Khouri lacks merit.[6] In sum, there is no conflict between the opinion of Dr. Al-Khouri and the findings of the state agency doctors, Dr. King and Dr. Annis, that Plaintiff's mental impairments result in only mild functional limitations and are not severe. Moreover, because the record supports the ALJ's determination that her mental impairments result in only mild functional limitations, the ALJ's step two determination that the mental impairments are not severe is supported by substantial evidence. *See* 20 C.F.R. §§ 404.1520a(d)(1); 416.920a(d)(1) (mental impairments imposing only mild restrictions are generally deemed non-severe). Accordingly, Plaintiff's second claim of error is without merit and should be denied.[7]

---

[6] Plaintiff erroneously contends analysis of Dr. Al-Khouri's opinion is governed by the treating physician rule. *See* Plaintiff's Brief at p. 6. Plaintiff is mistaken. Dr. Al-Khouri was an examining physician, not a treating physician. *See* 20 C.F.R. §§ 404.1527(c); 416.927(c) (addressing weighing of medical opinions and distinguishing weight given to opinions of treating physicians with "longitudinal picture" of a claimant's impairments from opinions of examining relationships and nonexamining sources). The ALJ is required to consider whether the examining physician's opinion is supported by and consistent with other medical opinions and signs, and other evidence of record. *See* 20 C.F.R. §§ 404.1527(c)(3)-(4); 416.927(c)(3)-(4). As discussed, the ALJ properly considered the opinion of Dr. Al-Khouri.

[7] Plaintiff does not challenge the ALJ's RFC determination with respect to her non-severe mental impairments. Indeed, as set forth, Plaintiff focuses the argument related to her non-severe mental impairments on an alleged conflict in the evidence with respect to the paragraph B findings on the PRT forms completed by the state agency doctors. The paragraph B criteria are not an RFC assessment but are used to rate the severity of the mental impairments at steps two and three of the sequential evaluation process. *See* SSR 96-8p, 1996 WL 374184 at * 4. The (continued . . .)

## RECOMMENDATION

For the reasons set forth it is recommended that the Commissioner's decision be affirmed.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636. Any objection must be filed with the Clerk of the District Court by October 5, 2015. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); LCvR 72.1. Failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

---

vague assertion in the "Summary of the Case" section of her brief to an "errant step four (4) decision" is insufficient to frame and develop any issue with respect to the mental RFC assessment. *See Murrell v. Shalala,* 43 F.3d 1388, 1389 n. 2 (10th Cir. 1994) (scattered statements and perfunctory complaints "fail to frame and develop an issue sufficient to invoke appellate review").

It appears the ALJ collapsed the analysis at step two (severity) and step four (RFC). *See* AR 14 (finding that "mild limitations" and "no episodes of decompensation" render Plaintiff's mental impairments non-severe and further finding the RFC "reflects the degree of limitation found in the 'paragraph B' mental function analysis" but conducting no further analysis of mental impairments with respect to the RFC). In so doing, the ALJ may have failed to follow the regulatory requirements for analyzing non-severe mental impairments at step four. *See Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013) (the ALJ may not "simply rely on his finding of non-severity as a substitute for a proper RFC analysis"). Even so, any error, had such a challenge been raised by Plaintiff, appears to be harmless as no evidence suggests that the RFC should have included any limitations related to her non-severe mental impairments. *See Alvey v. Colvin*, 536 F. App'x 792, 794-95 (10th Cir. 2013) (finding harmless error where ALJ did not engage in analysis of the claimant's mental functions and how they might be impacted by his medically determinable mental impairments but there was "no substantial evidence that would allow a reasonable administrative factfinder to include any mental limitations in [the claimant's] RFC.").

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED this 14th day of September, 2015.

BERNARD M. JONES
United States Magistrate Judge